OLIVER v. MONTGOMERY ET AL.

1. **Res adjudicata:** PARTITION: JUDGMENT. A judgment in an action for partition, in accordance with the prayer of the petition, will estop the plaintiff therein or those holding under him, from claiming in another proceeding that the title to the whole property involved in the partition suit is in him.

2. ———: EQUITY: ESTOPPEL. One who obtained a partition of real estate and was adjudged the owner of one-third thereof, while the title to the remainder was determined to be in others, is estopped from maintaining another action for the whole property, upon the ground that he owned it all at the time of the former adjudication, unless he can show some reason for equitable interference.

3. **Taxes:** PAYMENT BY CO-TENANT. A co-tenant who has paid the taxes upon the whole property held in common, and has purchased the same at tax sale, is entitled to be reimbursed for his advances therefor, with interest at six per cent. from date of sale.

*Appeal from Woodbury District Court.*

THURSDAY, OCTOBER 22.

From the year 1855 until the 28th of April, 1865, the plaintiff and William Montgomery and Daniel Rider were tenants in common of the equitable title to certain lots in Sioux City, the legal title being in Daniel Rider. At a tax sale begun on the first Monday of October, 1860, George Weare purchased all of said lots for the delinquent taxes of 1859, and a part of them also for the delinquent taxes of 1857 and 1858. On the 4th of January, 1861, George Weare assigned his certificate of purchase to William Montgomery, to whom a treasurer's deed was executed on the 10th day of April, 1865. On the 31st day of July, 1860, all of said lots were sold by the Marshal of Sioux City, for delinquent taxes, part of them for taxes of 1858 and 1859, and part of them for the taxes of 1859. At this sale William Montgomery was the purchaser. On the 7th day of August, 1860, the marshal executed to him deeds for all of said lots. At the April Term, 1865, of the Woodbury District Court, William Montgomery commenced an action against Hattie Oliver, and the other tenants in common

of the lots in petition described, asking partition thereof. In the petition in that case Montgomery set up the fact of the sale of all of said lots for taxes in October, 1860, and that they were bid in by him, and that by reason of the purchase of said lots at tax sale, and the subsequent payment of taxes he had expended the sum of twelve hundred dollars. The petition prays that the property be divided, and that in the partition the fact of his having paid the taxes might be considered, and that a proportionate share of the property might be set off to him, to reimburse him for the outlay of the said sum of twelve hundred dollars. Notice was served by publication, and default was taken against all the defendants in the partition suit. On the 26th day of April, 1865, the cause was submitted, and the court found the interest of William Montgomery in the lots described to be one-third, and that of the plaintiff, Hattie Oliver, to be one-third and that of various other parties named to be one-third, and appointed referees to make partition accordingly.

On the 27th day of April, 1865, the report of the referees was approved, and the title to one-third part in value of said lots, the same being in plaintiff's petition described, was established and adjudged to be in the present plaintiff, Hattie Oliver. After said partition William Montgomery paid various taxes upon the lots so set apart to plaintiff. On the 19th day of February, 1870, plaintiff commenced her action against William Montgomery, to set aside said tax deeds upon various grounds, amongst which is, that being tenant in common of the lots, he could not acquire a tax title, and set it up in opposition to his co-tenants.

Pending the action William Montgomery departed this life, and the present defendants, his heirs-at-law, were substituted. The court dismissed plaintiff's petition, and confirmed the title to the lots in controversy in the defendants. Plaintiff appeals.

*J. H. Swan*, for appellant.

*Joy & Wright*, for appellee.

DAY, J.—We do not deem it necessary in this case to determine whether in any case and under any circumstance, a tenant in common may acquire a tax title, and set it up against his co-tenants. At the time of instituting the partition proceedings William Montgomery held the deeds of the Marshal of Sioux City for all the lands which were the subject of the partition suit. He commenced his action for partition, and made no claim of title in virtue of these tax deeds. Upon the contrary he conceded that the other parties owned an undivided interest in the lots then the subject of controversy, and he asked that they might be divided in proportion to the respective interests of the parties. He procured a judgment to be entered, the present plaintiff having made default, in which she was declared to be the sole owner of the lots which are the subjects of the present action.

*1. RES ADJUDICATA: partition: judgment.*

If he was the sole owner of all the lots in fee, he should have declared the same, and instead of asking partition, he should have demanded, if necessary, that his title to the whole be confirmed and quieted. But now we have the action of a competent court, in a case in which the present plaintiff, and the ancestor of defendants, were parties, involving the subject matter of this suit, in which it was regularly adjudicated that this plaintiff is the owner of the lots in controversy. This judgment must estop William Montgomery and those claiming under him, from asserting a claim to this property under any chain of title which he held at the time the partition suit was commenced. This view is conclusive against any title which may be claimed under the marshal's deeds.

II. Like principles apply to the treasurer's deed. This deed was executed on the 10th day of April, 1865, either during the pendency of the partition suit, or before its commencement, and seventeen days before the judgment in the partition suit. If Hattie Oliver had been plaintiff in that partition suit, alleging that she was the owner of an undivided one-third of the lots, and asking that they be assigned to her in severalty, and William Montgomery had suffered judgment to go against him, without setting up a title acquired before judgment, and which might have been pleaded as a

*2. ——: equity: estoppel.*

defense, would not the judgment estop him and his privies from afterward insisting upon such title? *Interest reipublicae ut sit finis litum.* Where suit is brought, it is the duty of the defendant to plead everything upon which he can rely to defeat the plaintiff's right. If he fails to do this even equity will grant no relief, unless upon distinct equitable grounds, such as fraud, accident or mistake. *Campbell v. Ayers*, 1 Iowa, 258. It must be equally incumbent upon a plaintiff to set forth his whole claim, and allege all the grounds of it. Surely a party would not be permitted to have a partition of real estate, upon the ground that he owned an undivided one-third of it, and, after a judgment is obtained confirming his title to him as claimed, and also confirming the title of the defendants to the remainder, be allowed to maintain a further action for the whole, against the same parties, upon the ground that when the former judgment was rendered he owned it all, unless he could show some ground of equitable interference. Estoppels by judgment must be reciprocal, and it can make no difference in principle whether the party is plaintiff or defendant in the action. If Montgomery would have been estopped, had he been defendant, and had failed to plead a title which he might have pleaded before judgment, he must be equally estopped, being plaintiff, and failing in like manner to plead the same title. It seems to us, therefore, that the present defendants, who are in privity with William Montgomery, deceased, can make no claim to the property in virtue of the treasurer's deed, and that the court erred in confirming defendant's title to the land in controversy.

III. It appears from the judgment in the partition suit that no allowance was made William Montgomery on account of the taxes which he had paid. His claim in that regard seems not to have been passed upon or considered at all. It was probably not competent for the court in that action to grant him the relief which he asked. Plaintiff, in her petition, offered to reimburse defendants for the taxes paid, if it shall be determined that she is liable to do so.

3. TAXES: payment by co-tenant.

Inasmuch as William Montgomery was, at least equally with

his co-tenants, under obligation to pay the taxes upon these lands, and the payments were necessary for the protection of his own property, the recovery of the defendants will be limited to the amounts paid at the respective sales, and the amounts since paid, with interest on all from the dates of payment to the date of final decree, at six per cent. A full statement of the sums and dates of payment is attached to the additional abstract. As we understand the abstract, this statement includes the taxes paid upon all the lots owned in common, and not merely upon the lots which plaintiff claims. Defendants will have judgment for one-third this amount, with interest at six per cent. from the respective dates of payment.

A decree will be entered quieting plaintiff's title to the lots which were assigned to her by the partition judgment, and barring any claim of defendants under the tax deeds mentioned. Decree may be entered in this Court if desired.

REVERSED.